Good morning, Your Honors. Jason Carr appearing on behalf of Appellant Releasee Angela Earl. Released from imprisonment. When was Earl released from imprisonment? Is it a legal, invisible, constructive standard? Or is it a practical standard based on the condition, nature, and reasons for the releasee's current situation? I don't think it's either. I think the question is who is the custodian? Who was the supervising authority? And as I understand the way this works, the custodian, until she went home from, until she no longer was serving home confinement, was the Bureau of Prisons. Was the U.S. probation officer, who works for me, the judge, does the record show whether that officer was in any way supervising what she was doing, whether she was complying with the conditions of home confinement? It's a he, Your Honor. I'm glad you asked that, though, because it's fine. There's a dearth of evidence in this record because this jurisdictional issue was unfortunately brought to the Court's attention at a late date. But the answer to your question is yes, that he was supervised by a probation officer. And in fact, there's statutory authority for that as well. If you look at 3624C, which sets forth when BOP can release somebody to home confinement or community confinement, it specifically says in subsection C3 that the United States probation system shall to the extent practical offer assistance to a prisoner during pre-release custody under the subsection. The reality in this case was that Mr. Earle went home in early February. He had very minimal conditions. He had to just, he had a call occasionally to make sure that he was home at night. What would have happened if he'd done something to violate those conditions? That's a great question because it's a weakness in my case. Because it is beyond peradventure that if he had violated the home confinement conditions, he would have been yanked back into BOP custody. But that's not dispositive, in my opinion, because what I'm going to get to is... But who would have made the determination... Bureau of Prisons. Well, in conjunction with probation. No, but, okay, but who would have decided, yes, you violated one of these conditions, and you're going back to prison? It would have been a BOP determination. And that's exactly my point. That's why I think that supervised release did not commence until the BOP home confinement had been concluded. And, Your Honor, there's a lot to what you're saying. And the Miller opinion supports that conclusion that the only real dispositive test is whether or not you are still in BOP custody. But the problem with Miller, there's a couple problems with it, but one of them is that it conflicts with what the Supreme Court said in Johnson. Because Johnson was about, when did BOP have custody in a legal fashion of the person? Because in Johnson, what happened was the individual's release date was actually two and a half years earlier than it should have been. But he was still in prison. And the Johnson court says, it doesn't matter what your 3624 release date was, your actual legal custody status with BOP, that doesn't matter. It's a practical test, because you were still in prison. So your supervised release didn't start under the legal construct. And they specifically say, don't look at the legal construct. It's a practical test. When were you released from prison? When did the conditions of your release approximate those of supervised release? The condition that was broken was a condition imposed by whom? When Earl was revoked, I'm sorry? That's right. Five years later? Right. It was imposed by the judge. That's right. Right. Yes. And rather than one of the Bureau of Prison's conditions. And once again, Your Honor, I mean. Even if they had overlapped, that doesn't matter. It was the judge's condition that the judge found had been violated. And, Your Honor, I believe this point about the BOP still retains custodial legal jurisdiction in a legal sense over Earl during his home confinement period. That is by far the biggest weakness in the case for me. But there's one thing I would like the court to look at. You know, 3624, and Judge Smith actually draws this distinction as dissent in Turner, that the case law is not very careful about how it applies, 3624E, because it contains three components. 3624E is about when your supervised release starts. There's a probation component. There's a commencement component. And there's a tolling component. And the cases are not always clear about what they're applying. In Sullivan, they say that it's a tolling component that they're applying, but you don't really know that for sure. And Miller, I think, is just wrong about this, because in Sullivan, the individual may have well been under BOP custody because he was serving a concurrent federal time just in the state facility, which is common. But if you look at the beginning of the probation component of 3624E, it says, a prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer. That's exactly what happened here. They released him to home confinement to his probation officer, who supervised him. And the reality of the situation for Earl is that he didn't even know when his BOP legal custody ended. His release date, he didn't even get a letter from BOP. He didn't know. To him, he was on supervision. And that's one of the reasons. So what? So what? Well, the practicalities and the notice component of this may have some significance. Okay. Because you look at the case law Johnson talks about this, the sentence Turner talks about this, that all the purposes about supervised release are how it affects the rehabilitative efforts of the offender. If the offender is in a rehabilitative state, if the conditions and the nature of the confinement are rehabilitative, which Sullivan talks about, then it talks like supervised release. It acts like supervised release. It is supervised release. So what the impression that the inmate would get is salient to the analysis. Well, but at the other end of the process, as I'm sure you're well aware, if I place a defendant who's been charged and is awaiting trial in front of me as a district judge, if I place that defendant on home confinement, and let's say it takes a year until we finally get around to sentencing, if the defendant says, Judge, I have to get credit for the year against the sentence for the year I've already spent in home confinement, the law is quite clear. Oh, no, you don't. That doesn't count as custody. And I believe that strongly supports my position, Your Honor. How so? Because the case law, and in Reno v. Correa, the Supreme Court case, it talks about even community confinement doesn't count for imprisonment. Turner, the majority opinion, talks about how. But that's because he's not in the custody of the Bureau of Prisons. Well, but Reno v. Correa doesn't center, doesn't focus on that. I mean, that's an aspect of it, but it also focuses on the nature of the confinement. And Turner and Sullivan talk about that as well, that it's about what is it like, what are the actual physical conditions of the confinement. Was the judge aware, I apologize, completely. No, I'm sorry, Your Honor. No, no, no, I interrupted you. Does the record tell us whether the sentencing judge was aware that the defendant had been released and was now being supervised? The federal public defender apologizes for that, because he was not raised at the district court level. No reason to apologize at all. I didn't think it showed that. It might not even have been able to establish it, but that's fine. I was just curious. May I ask, I think the answer to the question, though, is important to the notice component. Because how this comes up is that Earl, because we looked at Miller, and we're like, well, the community confinement doesn't count under Miller. But he talked to us, and after the sentencing, the revocation sentence, he said, but I swear I was on probation for five years and four months. I had the same probation officer. I went to the same office. Everything was just like probation. It was the same to me. And when he makes this representation to us, we're like, well, maybe there's more to this than we thought, and that's why we filed the late notice of appeal. And that's why I think it's partly significant how the court interprets the statute, because it has the plain meaning of release from imprisonment, which the Supreme Court centered on and focused on in Johnson, the plain meaning of imprisonment and released. It's a matter of due process. In other words, in order for this situation to withstand challenge, the law should require, and this court should require, that the defendant be told when he's sent home on home confinement, by the way, you haven't started supervised release yet. Right? Would you agree with me on that? If that's what this court's ultimate ruling is, yes, that it doesn't start the commencement, for sure. I apologize. Does the record specifically, does the record have the actual conditions of supervised release? Are they part of the record, part of the sentencing order? The revocation or the original? The original. We don't have the judgment because the case is so old that we didn't, we don't have the, we couldn't get a copy of that judgment. It wasn't on pacer and electronic records, or we couldn't even get a copy. Do you know whether the probation office had a copy? I'm sure that they do. My question is because, and I, you know, we now have boilerplate about the commencement upon, I think it says upon your release, I don't know. It could make a difference. Because at the time of sentencing the defendant is told, upon your release from the custody of the Bureau of Prisons, I think that sinks your case entirely. Yes. At least the notice issue. You have 72 hours to report. You have 72 hours to report in this district or a district in which you're released. But if it says upon your release from imprisonment, that might strengthen your case, it seems to me, in terms of the notice aspect. Well, that's a great point, Your Honor. I can get a hold of that, those conditions and forward them to the court. If that would be salient to the decision, I certainly can do that. Pardon me? I think so. All right. Yes, we'll allow your opponent to object if he has an objection. But barring that, yes, please do. I'll do it. Thank you. Thank you. Good morning. May it please the Court. Adam Flake for the United States. To begin with, I just want to be clear about what's in the record in this case and what's not in the record in this case. There's nothing in the record that says that he was placed on home confinement more than five years outside of when he violated. In other words, the only thing that in any way supports this is a statement made by counsel during the revocation hearing. What counsel said was, I believe it was June 10th Earl started his supervision, June 10th, which would have put us well within the five years. Before that time, he was released from BOP custody to reside at a halfway house for two months and then, I guess, realized he was doing well at the halfway house and they released him to home confinement. And so what we have is an offhanded comment, a vague comment by counsel that doesn't constitute evidence. And in my brief, I pointed out this Court's opinion in Ceja Prado, I believe it's pronounced. That case was unusual because it was about a person who had originally claimed to be 21 years old and on appeal the Court took what it described as an oddity and an unusual step and the Court actually accepted evidence. It accepted evidence of a birth certificate and a few other things that showed that this person's age was in serious question. We just don't have that here. We don't have any evidence. We have a statement by a lawyer that is not evidence, a vague statement by a lawyer, and I don't think that the Court should even address this argument at all in the absence of actual anything inside the record that can be deemed evidence. Now, obviously, if the Court does address this argument, I'd like to just point out, I think that the plain meaning of the statute becomes really clear in subsection C of 18 U.S.C. 3624, which is what we're talking about. The director of the Bureau of Prisons shall to the extent practicable ensure that a person serving a term of imprisonment spends a portion of the final months of that term under conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for reentry. And I'm skipping a little bit. And then the second part of that. Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement. So I think the statute makes it quite plain that the BOP is doing this. The BOP is exercising their authority, whether the BOP exercises that authority to put them in a community corrections facility under this subsection or whether they exercise that authority to put them in a home, under home contention. What about the notice issue telling the... What difference, if any, does that make that they don't say to the defendant, and the record doesn't show that they did, so they don't say to the defendant, by the way, you're under our custody still. Supervisory lease hasn't started. Your Honor, I apologize. It's outside the record in this case. I'm not prepared to address what sort of notice they did and did not give. I'm certainly not prepared to address what Mr. Earle said to his counsel afterwards. But I simply don't know. I can't speak to it. Well, from my view, I don't think it matters one way or the other. But I wanted to ask counsel about it, and I just didn't know what your views were. Whether he's told or not, I don't think it really matters. I agree with you, Your Honor. And certainly I wanted to hasten to add, we certainly don't have any objection to the judgment in this case being put in front of... I don't have any problem with that at all, so I wouldn't object to Mr. Carr submitting that. Unless the court has any questions, I'll... Thank you. Thank you, counsel. Your Honor, I used up all my time, so... Well, 30 seconds, fine. I just wanted to note that under Cia Prada, which is a prime jurisdictional case, and I believe Judge Reinhart wrote it, that the record there was all supplemented on appeal. In my case, I felt like I was in a superior position because at least I had some facts in the record to support the jurisdictional question. But if this court... And I didn't want to violate the rule about supplementing a record on appeal, but if this court would like it, I could submit affidavits, and the government could get a commitment order into the record a lot easier than I could from BOP to prove exactly when the home confinement occurred and what notice was given. Yeah, but what about his comment that there's nothing in the record, no evidence in the record that... I think the argument, the point made, is there's no evidence in the record that establishes the period when home confinement began and when it terminated. Is that correct? Well, there is. It's on... In the record on pages 16 and 17, counsel says he started out in home confinement. After two months, he went to... I mean, he started out, excuse me, at the community correction centers. After two months, he went to home confinement. If you back-date it, he started... That means he started the halfway house in December. He was released to home confinement in February to complete the last four months until his BOP release date. So that's at least a decent factual record, far better than the Sejo Prado, where the defendant lied about his age to the district court and the issue didn't come up until on appeal. And the government, I take it, didn't object to that representation by defense counsel? No, Your Honor. Aside from the notice issues, which you and Judge Carr have talked about, I'm interested... How do you distinguish Miller from this case? Same statute, slightly different in quotes, confinement, but doesn't that govern this? Miller... The best way I can answer... Of course, in Miller, the conditions of confinement are far different. He's actually in a jail, and it seems a lot like imprisonment when you're in the Bannock County Jail. But the other aspect of it... And this is somewhat... I would submit there's an inter-circuit split between Sullivan and Miller. In Miller, the court drops this footnote 6, where they say, well, in Sullivan, he wasn't still in federal custody. But if you look at that footnote, it says that there was something in the record that says that he was released from federal custody due to the parole violation. But if you look at Sullivan, it says the parole violation didn't occur until after he was released to the pre-release center. So that footnote in Miller cannot be right. So we don't know in Sullivan if the individual wasn't still in BOP custody. If he was still in BOP custody, they're in direct conflict with each other, the two cases. And, of course, the other... And so if Miller is more about the conditions of confinement, in that case, jail, I would concede that if you're in jail, you haven't been released from imprisonment. In my case, I have home confinement. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Carr, Reinhardt, Smith